**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **CARL E. JORGAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )  No. 3:19-cv-00907 |
| v. | ) |
| | )  Judge Trauger |
| **BILL B. LEE,** *Governor of the State of Tennessee, in his official and individual capacities, et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM**

Carl. E. Jordan filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against Governor Bill B. Lee; Tennessee Bureau of Investigation Director David B. Rausch; Tennessee Attorney General Herbert H. Slatery, III; the State of Tennessee; and an unspecified number of John and Jane Does. (Doc. No. 1). The plaintiff is a resident of Nashville, Tennessee.

This action presents a constitutional challenge to the Tennessee Sexual Offender and Violent Sexual Offender Registration and Tracking Act, as amended, Tenn. Code Ann. §§ 40-39-201 – 218 (2019) ("the Act"), among other claims.

**I.  Screening Standard**

Because the plaintiff is proceeding as a pauper in this action, the court must conduct an initial review of the complaint under 28 U.S.C. § 1915(e)(2) and dismiss it or any portion of it that is frivolous or malicious, fails to state a claim for which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. In assessing whether the complaint states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009),

1

and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under § 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)").

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

## II. Section 1983 Standard

The plaintiff seeks relief pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

## III. Alleged Facts

The complaint alleges that the plaintiff, a "Black American Citizen," was released from state prison on May 2, 2005, after the expiration of his thirty-five year sentence. The plaintiff had been imprisoned for the crimes of second degree murder, armed robbery, and aggravated rape committed by the plaintiff on July 11, 1980.

On May 2, 2005, an unidentified employee of the Tennessee Department of Correction told the plaintiff that he had to report to the Metropolitan Davidson County Sheriff's Department to be added to the sex offender registry.

Since his release from incarceration, the plaintiff has been arrested for failure to report his change of address. He received ten days of imprisonment in the Davidson County Jail for failing to pay the $150 fee required under the sex offender registry. He later was arrested again and received three days of imprisonment in the Davidson County Jail. In 2016, the plaintiff was denied an employment opportunity because he is on the registry.

On October 7, 2018, the plaintiff wrote to the Tennessee Bureau of Investigation ("TBI") and requested to be removed from the sex offender registry. On October 19, 2019, the TBI responded, denying the plaintiff's request because he committed a sexually violent offense and therefore must continue to register for life while living in Tennessee unless his conviction is overturned or he is exonerated of his sexual conviction.[1]

In April 2019, the plaintiff was denied a trip upon a cruise ship because he is on the registry. On April 22, 2019, the plaintiff was denied housing because he is on the registry.

---

[1] The plaintiff references his letter to and from the TBI as attachments to his complaint (Doc. No. 1 at 4-5), but no attachments were submitted.

According to the complaint, one percent of all black men in the United States are registered sex offenders and black men enter the sex offender registries at nearly twice the rate of white men. (Doc. No. 1 at 6).

## IV. Analysis

The plaintiff alleges that the application of the Tennessee sex offender registry's requirements to him "punish[es] a crime committed previously to the existence of such laws" in violation of the Ex Post Facto Clause and the Fourteenth Amendment to the United States Constitution. (Doc. No. 1 at 6). The plaintiff also alleges that that Act violates his First Amendment rights and, as it is applied to him, is "racist" and "discriminatory." (*Id*.) The plaintiff seeks declaratory and injunctive relief as well as compensatory, monetary, and punitive damages. (*Id*. at 3).

Tennessee first adopted a sex offender registration law in 1994. The 1994 law was repealed and replaced in 2004. The Act has been amended several times since 2004. Prior to the 2014 Amendment, registrants who were not subject to the lifetime registration requirement could apply to the TBI for removal from the registry after ten years. In 2014, Tenn. Code Ann. § 40-39-207 was amended to require lifetime registration requirements for certain offenders. Tenn. Code Ann. § 40-39-207(g)(1).

Generally speaking, the Act requires sex offenders to provide correct, detailed personal information to the state database of sex offenders, some of which is included in an internet-accessible public sex offender registry. Offenders must report in person annually to verify and update their registration information. The Act imposes geographic restrictions on where registered offenders may live, work, or "be upon or remain" or "stand [or] sit idly." Tenn. Code Ann. §§ 40-39-211(a), (d). Registered offenders must provide advance notification of travel outside of the state

or country. *See* Tenn. Code Ann. § 40-39-204(h). Failure to comply with the requirements of the Act may subject an offender to fines or felony criminal charges. *See* Tenn. Code Ann. §§ 40-39-208, 40-39-211.

The pro se complaint does not provide all of the details of Jordan's underlying conviction and sentence. The court's research reveals that the plaintiff pled guilty to aggravated rape, armed robbery and second-degree murder on January 23, 1981. *Jordan v. State of Tenn.*, No. 01C01-9711-CR-00528, 1998 WL 668258, at *1 (Tenn. Ct. Crim. App. Sept. 29, 1998). He was sentenced to three concurrent forty-year sentences. *Id*. On May 2, 1986, the Tennessee Court of Criminal Appeals granted Jordan post-conviction relief and vacated the guilty plea on a finding that the trial court had failed to comply fully with required procedures in a determination of whether the guilty plea was made knowingly and voluntarily. *Id*. On September 23, 1986, Jordan again pled guilty to aggravated rape, armed robbery, and second-degree murder and was sentenced to three concurrent thirty-five year sentences. *Id*.

From the limited information available to the court at this time, it appears that, at the time of his guilty plea, Tennessee's then-current sex offender registry statute, the Sexual Offender Registration and Monitoring Act, 1994 Tenn. Pub. Laws, ch. 976, as amended ("the 1994 Act"), required the plaintiff to register as a "sex offender," but did not otherwise restrict his liberty. And the plaintiff's registration was private because the 1994 Act made the registry information available only to law enforcement. The 1994 Act also allowed registrants to apply for removal from the registry ten years after completion of their sentence.

The repeal of the 1994 Act and adoption of the current Act in 2004, along with subsequent amendments, has resulted in the plaintiff's being subject to a lifetime registration requirement. The plaintiff must report to a law enforcement agency each year in the month of his birthday and

5

pay a fee of $150. The plaintiff is now listed in a public internet database, along with his home and work addresses and other identifying information, and he is listed as a "violent sexual offender." The plaintiff alleges that the reporting, surveillance, and supervision requirements of the Act limit his employment opportunities, his travel, and his public speech.

In *Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the Sixth Circuit Court of Appeals held that the retroactive application of the Michigan Sex Offenders Registration Act violated the Ex Post Facto Clause. *Id*. at 705-06. The court found that the plaintiff's arguments were "far from frivolous and involve matters of great public importance." *Id*. at 706.

On May 20, 2019, in *Doe v. Rausch*, 382 F. Supp.3d 783 (E.D. Tenn. 2019), a registered sex offender brought a Section 1983 action challenging the application of the 2014 Amendment and the requirement of lifetime compliance with the Act to his conduct in 2006. *Id*. at 790. With respect to the plaintiff's Ex Post Facto claim, the court concluded:

> [T]he actual effect of lifetime compliance with the Act is punitive as it relates to Plaintiff. The Act has limited where he can live, work, gather with family, and travel without any individualized assessment of whether those restrictions are indeed necessary to protect the public from any future crimes he may commit. There has been no showing that the benefits to the State outweigh the negative consequences to Plaintiff. There has been no individualized attempt to justify the continued imposition of these restrictions on Plaintiff for life. Moreover, the State has not presented any countervailing evidence to refute the Plaintiff's "clearest proof" of the punitive effects of the Act on him. The Court finds that the retroactive imposition of lifetime compliance with the Act is an unconstitutional Ex Post Facto law as applied to the Plaintiff. Plaintiff is entitled to summary judgment on this claim.

*Id*. at 799-800. The court determined that Doe was entitled to a permanent injunction against the Director of the Tennessee Bureau of Investigation from retroactively enforcing against the plaintiff the amendment to the Act that imposes lifetime registration on certain offenders. *Id*. at 802. The court awarded the plaintiff attorney's fees and costs as a prevailing party in his Section 1983 action challenging the amendment to the Act. *Id*. at 803.

Just over a year earlier, another registered sex offender challenged the constitutionality of the Act. *See John Doe v. Mark Gwyn*, No. 3:17-cv-504 (E.D. Tenn. filed 11/22/2017) (Phillips, J.). At the time of his guilty plea, Tennessee's then-current sex offender registry statute required the plaintiff to register as a sex offender but did not otherwise restrict his liberty. The repeal of the 1994 Act and adoption of the current Act in 2004, along with subsequent amendments, resulted in the plaintiff's being subject to numerous new registry requirements. The plaintiff alleged that the Act violates the Ex Post Facto Clause, his due process rights to travel and work, his First Amendment right to free speech, due process by imposing retroactive restrictions on him and by breaching his plea agreement, and due process by imposing criminal liability without any proof of actual knowledge of the duty to comply with the law and due to vagueness and impossibility.

The TBI Director filed a motion to dismiss, and the court found that the "plaintiff has alleged a number of affirmative disabilities or restraints imposed upon him by the Act and some of these restrictions could be considered traditional forms of punishment. On the bare allegations of the complaint, the Court cannot determine whether these restrictions have a rational connection to a non-punitive purpose or if they are excessive with respect to such purpose." (*Id.*, Doc. No. 25 at 18). Having so found, the court concluded that the plaintiff had alleged a plausible claim that the present version of the Act is so punitive in effect as to violate the Ex Post Facto Clause. (*Id.*) The court further found that the plaintiff had not stated a plausible claim for violation of his due process rights as to travel (*id.* at 21) but had stated plausible claims for violation of his due process rights with respect to employment (*id.* at 22) and the imposition of criminal liability without requiring proof of actual knowledge of the duty to comply (*id.* at 25). The court found that it was

7

without sufficient information to determine whether the Act violated the plaintiff's First Amendment rights. (*Id*. at 24-25). Cross motions for summary judgment are presently pending before that court. (*Id*. at 57).

Here, the court finds that the instant complaint states plausible Ex Post Facto and due process claims under Section 1983. In particular, given the *Rausch* and *Gwyn* decisions, in which both plaintiffs were represented by counsel, the particulars of this plaintiff's claims deserve further development.[2] The court is unable to determine from the record before it how much of a burden the Act imposes on the plaintiff's rights to free speech; therefore, the court will not dismiss the plaintiff's First Amendment claim at this time.

This case concerns legal issues of public concern. The court finds that this case is an appropriate case in which to appoint counsel. Accordingly, the court will direct the Clerk of Court to appoint counsel for the plaintiff from the civil appointment panel. Because counsel will file an amended complaint, the court will not dismiss any defendants at this time.

**V. Conclusion**

This action will be permitted to proceed. The Clerk of Clerk will be directed to appoint counsel for the plaintiff from the civil appointment panel. The interests of justice necessitate such an appointment. Counsel will be permitted to file an amended complaint.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge

---

[2] Based on the sparse record at this time, the court is unable to conduct a thorough analysis of whether any of the plaintiff's claims are barred by the governing statute of limitations.